IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| MARIONO J. MUOIO,<br><br>             Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>             Defendant. | CASE NO. 4:24-cv-2175<br><br>DISTRICT JUDGE<br>PAMELA A. BARKER<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT &<br>RECOMMENDATION** |

Plaintiff Mariono Muoio filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying child's insurance benefits and supplemental security income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

**Procedural history**

In September 2022, Muoio filed an application for child's insurance benefits and supplemental security income alleging a disability onset date of

February 17, 2021,[1] and claiming he was disabled due to anxiety disorder, autistic disorder, major depressive disorder, asthma, and "stomach issues." Tr. 223, 235. The Social Security Administration denied Muoio's application and his motion for reconsideration. Tr. 99, 116–18. Muoio then requested a hearing before an Administrative Law Judge (ALJ). Tr. 172.

In January 2024, an ALJ held a hearing. Muoio and a vocational expert testified. Tr. 72–98. In March 2024, the ALJ issued a written decision finding that Muoio was not disabled. Tr. 49–60. The ALJ's decision became final on October 15, 2024, when the Social Security Appeals Council declined further review. Tr. 1–4; *see* 20 C.F.R. § 404.981.

Muoio filed this action on December 16, 2024. Doc. 1. He asserts the following assignment of error:

> The ALJ failed to account for the opinions provided by the state agency psychologist, Dr. Leizer.

Doc. 7, at 2.

**Evidence**

*Personal and vocational evidence*

Muoio was born in 2003 and was 18 years old on his alleged disability onset date. Tr. 58. He graduated from high school and has no past relevant work. Tr. 80.

---

[1]     "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

*Relevant medical evidence[2]*

In January 2022, Muoio saw a licensed social worker for a psychiatric diagnostic evaluation. Tr. 444–57. Muoio said that he was interested in counseling—he was unhappy and didn't feel much emotion. Tr. 444. He was afraid of driving and working, and felt nervous about going to unfamiliar places. Tr. 444. Muoio listed his ex-girlfriend as part of his support system. Tr. 445. Their relationship ended after about five months, but they were still in contact. Tr. 449. Muoio denied having any legal issues. Tr. 447. He had no history of mania or anger issues but did have a history of depression and anxiety. Tr. 452–53. He reported past emotional abuse. Tr. 445.

The assessment form listed Muoio's strengths, including intelligence, maturity, and effective communication skills. Tr. 456. On exam, Muoio was well-groomed with appropriate dress, relaxed posture, normal motor activity, good eye contact, cooperative behavior, normal articulation, adequate vocabulary, and soft and hesitant speech. Tr. 458. Muoio had a euphoric and empty mood and flat affect. Tr. 458. He had a logical thought process and no delusions or perceptive issues. Tr. 458–59. Muoio was alert and oriented with normal concentration, average knowledge and intelligence, and good insight. Tr. 459. He had good "formal (test)" judgment and good "functional (social)"

---

[2]     Muoio only challenges the ALJ's decision as to his mental health issues, so I only recite that evidence.

3

judgment. Tr. 459. The provider diagnosed Muoio with anxiety disorder and major depressive disorder. Tr. 456.

In March 2022, Muoio had a follow-up for medication management. Tr. 418. He reported that Prozac improved his motivation and drive, but he was still having panic attacks. Tr. 418. Muoio's mental status exam showed normal behavior and speech, an anxious mood, appropriate affect, a coherent and logical thought process, and attentive cognition. Tr. 418. The provider increased Muoio's Prozac dosage. Tr. 418. A week later, Muoio saw a gastroenterologist and was alert, oriented, and exhibited a normal affect. Tr. 346. In April, Muoio reported feeling more energized and said that he was taking his dogs for walks. Tr. 380.

In early May 2022, Muoio reported at a medication management appointment that he was doing "ok." Tr. 382. He still had panic attacks. Tr. 382. Muoio had "thoughts of not being around," but he was not actively suicidal. Tr. 382. His diagnoses and problem list included anxiety disorder, autistic disorder, and moderate major depressive disorder, all of which were assessed as "improving." Tr 382. The provider increased Muoio's Prozac dosage. Tr. 382. Later that month, Muoio told the therapist that his depression was improving and that he hadn't had negative thoughts as often as before. Tr. 383. He reported sleeping a lot and still feeling unmotivated. Tr. 383.

In June 2022, Muoio discussed his physical health problems with his therapist. Tr. 384. He reported playing basketball daily and listening to music.

4

Tr. 384. The next day, Muoio had a medication management visit and reported that he still experienced anxiety. Tr. 386. Muoio said that the increased medication was ineffective in controlling his anxiety, but also that his anxiety had improved 25 to 30 percent since he started medication. Tr. 386. His exam findings showed normal behavior, normal speech, an anxious mood, appropriate affect, a coherent and logical thought process, and attentive cognition. Tr. 386. The provider added Abilify to Muoio's prescriptions. Tr. 385. Later that month, Muoio reported that he had been "hanging out with his dad and uncle." Tr. 387.

In mid-July 2022, Muoio told the therapist that he had a new girlfriend. Tr. 388. At a gastroenterology appointment later that month, Muoio was alert, oriented, and had a normal affect. Tr. 362. Two days later, Muoio told his therapist that he continued to experience anxiety, panic attacks, and low motivation. Tr 390. He still had thoughts of not wanting to be around. Tr. 390. On exam, Muoio's mood was depressed and anxious. Tr. 390.

In August 2022, Muoio had a medication management visit and said that he had "no response" to the Abilify. Tr. 396. He reported anxiety and panic attacks during stressful situations. Tr. 396. He didn't leave his house often, and he had low motivation and trouble staying asleep at night. Tr. 396. Muoio reported thoughts of not wanting to be around. Tr. 396. Muoio's exam findings showed an anxious mood. Tr. 396. The provider discontinued Abilify, continued Prozac, and started Wellbutrin. Tr 396.

In October 2022, Muoio told his therapist that his anxiety had improved. Tr. 401. Muoio left the house three times the week before the appointment. Tr. 401. He reported low motivation and having dark thoughts. Tr. 401. The therapist described Muoio's mental health disorders as "controlled." Tr. 401. In November, Muoio described his symptoms as "the same as before." Tr 509. He reported panic attacks during stressful situations and dark thoughts a few times a week. Tr. 509. He had a slight improvement in motivation. Tr. 509. On exam, Muoio had a normal mood and appropriate affect. Tr. 509.

In January 2023, Muoio had a follow-up for medication management. Tr. 507. He reported that he did not leave his house. Tr. 507. Muoio rated his anxiety a "7/10" and his depression a "9/10." Tr. 507. On exam, the provider described Muoio's mood as normal, anxious, and irritable. Tr. 507. Muoio's affect was appropriate and flat. Tr. 507. Muoio had normal behavior and speech, logical and coherent thoughts, and attentive cognition. Tr. 507. The provider discontinued Prozac and started Muoio on Effexor. Tr. 507.

At a follow-up in March 2023, Muoio reported that he was "about the same." Tr. 503. He said that he had decreased motivation and napped during the day. Tr. 503. Muoio said that he showered two to four times a week. Tr. 503. Muoio's exam findings showed a normal and anxious mood and an appropriate affect. Tr. 503. Muoio had normal behavior and speech, a coherent and logical thought process, and attentive cognition. Tr. 503. The provider increased Muoio's Effexor. Tr. 503.

In May 2023, Muoio said that he had more energy. Tr. 501. He was playing games and the guitar, going to his uncle's place, and walking his dogs. Tr. 501. Muoio reported not showering often because he didn't like the feeling of being wet and having to wait for his hair to dry. Tr 501. He was not working or looking for a job. Tr. 501. In July 2023, Muoio reported being "pretty down" and anxious about his father's health condition. Tr. 497. At both of these visits, Muoio displayed normal behavior and speech, a normal mood, and appropriate affect. Tr. 497, 501.

In September 2023, Muoio said that he was "still the same." Tr. 495. He still played games and walked his dogs. Tr. 495. Muoio reported suicidal and intrusive thoughts. Tr. 495. His exam findings showed a normal and depressed mood. Tr. 495. His affect was labile, depressed, and flat. Tr 495. Muoio had normal behavior and speech, a coherent and logical thought process, and attentive cognition. Tr. 495. In October, Muoio rated his depression a "9/10." Tr. 493.  He said that he was not motivated and was easily annoyed. Tr. 493. Muoio's exam findings showed normal behavior and speech, a normal and depressed mood, and appropriate affect. Tr. 493. Muoio had a coherent and logical thought process and attentive cognition. Tr. 493. The provider adjusted Muoio's medications. Tr. 493.

In January 2024, Muoio's exam findings showed normal behavior and speech. Tr. 491. Muoio was properly oriented and exhibited a normal mood, appropriate affect, coherent and logical thought process, and attentive

cognition. Tr. 491. The provider assessed Muoio's mental health impairments as "controlled." Tr. 491.

*Function report*

Muoio completed function reports as part of his disability application. He denied any problems attending to his personal care. Tr. 253. Muoio wrote that he could prepare frozen meals in the microwave but was too anxious to use the stove or oven. Tr. 254. He mowed the yard once a week, which took about 45 minutes. Tr. 254. Muoio said that he was unable to leave the house alone due to anxiety and he was afraid to drive. Tr. 255. His hobbies included playing guitar, playing video games, and watching television. Tr. 256. Muoio reported that he spent time with others watching sports once a week. Tr. 256.

*State agency opinions*[3]

In December 2022, Courtney Zeune, Psy.D., reviewed Muoio's record and assessed Muoio's residual functional capacity (RFC).[4] Tr. 101–05. Dr.

---

[3]     When a claimant applies for disability benefits, the State Agency creates a record. The record includes the claimant's medical evidence. A State Agency disability examiner and a State Agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the State Agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the State Agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

[4]     An RFC is an "'assessment of'" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it's the SSA's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

Zeune opined that in a workday, Muoio could complete moderately complex tasks in a routine work environment. Tr. 105. He could have no contact with the general public and superficial contact with others. Tr. 105. And Muoio should have changes explained in advance. Tr. 105.

In June 2023, Leslie Rudy, Ph.D., reviewed Muoio's record. Tr. 124–25. Dr. Rudy opined that Muoio could carry out one-to-four step tasks in a setting without unusually fast-paced or high-production demands. Tr. 124. He could have occasional and superficial interaction with others, and adapt to occasional changes implemented gradually. Tr. 124–25.

*Hearing testimony*

Muoio, who was represented by counsel, testified at the telephonic administrative hearing held in January 2024. Muoio stated that he lived in a house with his parents. Tr. 79. He graduated from high school and has never been employed. Tr. 79–80. Muoio testified that most days he stays in bed watching television and YouTube videos. Tr. 83, 87. He only gets along with his parents. Tr. 83. When he is around others, he usually doesn't speak and he keeps to himself. Tr. 83. Muoio explained that his reticence to speak around others was a lifelong issue. Tr. 84.

Muoio said that he had about two panic attacks a week triggered by stressful events like going to the doctor. Tr. 84. He attended counseling twice a month, which helped "a little bit." Tr. 85. His mental health medication was not helpful. Tr. 85. Muoio did not perform household chores and he struggled

9

with personal hygiene. Tr. 86. He could not perform any type of quick errand in the community. Tr. 86. Muoio stated that his only social activity was going to his uncle's house once a week. Tr. 86.

The ALJ asked the vocational expert to determine whether a hypothetical individual with the same age, education, and work experience as Muoio could perform work if the individual had the limitations assessed in the ALJ's RFC determination, described below, and which included a limitation that the individual have no more than occasional contact with supervisors, co-workers, and the general public. Tr. 91. The vocational expert answered that such an individual could perform work as an order puller, hand packager, and laundry laborer. Tr. 91. The ALJ asked the vocational expert if his answer would change if the hypothetical individual was further limited to "superficial" interaction with others, defining *superficial* as "no more than just cursory interactions." Tr. 92. The vocational expert said that his answer would not change—such an individual could still perform the jobs identified above. Tr. 92.

Next, Muoio's attorney asked the vocational expert if his answer would change if *superficial* was "further define[d]" as "cursory … such as exchanging basic greetings." Tr. 95. The vocational expert stated that "[i]f that's the only type of interaction they could deal with," all work would be precluded "because that … would be much less than superficial interaction." Tr. 95.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

> 1. Born [i]n … 2003, the claimant had not attained age 22 as of February 17, 2021, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

> 2. The claimant has not engaged in substantial gainful activity since February 17, 2021, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

> 3. The claimant has the following severe impairments: obesity, Crohn's disease/irritable bowel syndrome, major depressive disorder, anxiety disorder-unspecified, and autism (20 CFR 404.1520(c) and 416.920(c)).

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that the claimant is limited to the performance of simple, routine tasks and to the making of no more than simple, work-related decisions, conducted in a work setting that requires no more than occasional interaction with co-workers, supervisors, or the public, which setting is routine, in that it contemplates few changes.

> 6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

> 7. The claimant was born [i]n … 2003, and was 18 years old, which is defined as a younger individual

age 18–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 17, 2021, through the date of this decision (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

Tr. 51–59.

### Standard for Disability

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1.  Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2.  Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3.  Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4.  What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5.  Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920. *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id*. "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id*. If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id*. at 103. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v.*

14

*Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

As to social limitations, Dr. Zeune, the state agency psychologist who evaluated Muoio's initial disability application, limited Muoio to no contact with the general public and superficial contact with others. Tr. 105. On reconsideration, state agency psychologist Dr. Rudy limited Muoio to occasional and superficial contact with others. Tr. 124. The ALJ's RFC limited Muoio to having occasional interaction with others. Tr. 54. Muoio argues that the ALJ erred by either not also limiting Muoio to superficial interaction or failing to explain why he did not do so.[5] Doc. 7, at 6; *see, e.g.*, Soc. Sec. Ruling 96-8P, *Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, at *7 (S.S.A. July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."); *Davidson v. Comm'r of Soc. Sec.*, No. 3:16-cv-2794, 2018 WL 1453472, at *2 (N.D. Ohio Mar. 23, 2018).

The term *superficial*, unlike the term *occasional*, is not defined under the Dictionary of Occupational Titles or Selected Characteristics of

---

[5]     In his issue presented for review, Muoio challenges the ALJ's evaluation of "Dr. Lester's opinion." Doc. 7, at 2. This appears to be a typo, as there is no doctor by that name in the record.

Occupations.[6] *Betz v. Comm'r of Soc. Sec.*, No. 3:21-cv-2408, 2022 WL 17717496, at *10 (N.D. Ohio Nov. 8, 2022), *report and recommendation adopted*, 2022 WL 17985680 (N.D. Ohio Dec. 29, 2022). The Sixth Circuit has found meritless the argument that an occasional-interaction limitation was inconsistent with superficial-interaction limitation. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). And if there is no inconsistency, the ALJ was not duty-bound to explain why he omitted a superficial limitation from the RFC. *See id.*; Soc. Sec. Ruling 96-8P, 1996 WL 374184, at *7.

Moreover, in an unskilled work setting such as the kind that the ALJ limited Muoio to, superficial interactions are the expected norm:

> "[an] emphasis on the 'qualitative' nature of the vocationally-undefined adjective 'superficial' as if in conflict with the defined 'quantity' of interaction ... ignores the reality that time-limited 'occasional' interactions in an unskilled work setting are reasonably understood to require only surface-level interactions."

*Stephen D. v. Comm'r of Soc. Sec.*, 734 F. Supp. 3d 729, 738 (S.D. Ohio 2024) (quoting and adopting the magistrate judge's supplemental report and recommendation, No. 1:21-cv-746, 2023 WL 4991918, at *9 (S.D. Ohio Aug. 4, 2023)). Here, the ALJ found that Muoio could perform "simple, routine tasks" involving "no more than simple, work-related decisions" in a "routine" setting that "contemplates few changes." Tr. 54. So the ALJ's additional mental

---

[6] "Occasionally" means performing an activity for "up to 1/3 of the time." *See* Selected Characteristics, *supra*, and Soc. Sec. Ruling 83-10, 1983 WL 31251, at *5.

limitations in the RFC make clear that Muoio is limited to unskilled work that would not require more than superficial interactions. *Stephen D.* found, "'occasional' interactions in an unskilled work setting are reasonably understood to require only surface-level interactions, and are unlikely to involve deep, penetrating or profound (i.e., non-superficial) conversations or interactions. This reality is particularly true when, as here, the mental RFC findings also limit the plaintiff to unskilled work that involves only simple instructions … with simple decision-making, and with no more than occasional changes in a routine work setting, at a pace not set by an external source." 2023 WL 4991918, at *9.

Even if the term *occasional* could be said to be inconsistent with the term *superficial*, Muoio has not shown that the ALJ failed to explain why he omitted a *superficial* limitation. To start, the ALJ wrote:

> The state agency psychological consultant, Courtney Zeune, Psy.D., indicated that the claimant could complete moderately complex tasks in a routine environment, with *no public contact, superficial interaction with others*, where changes could be explained in advance. The state agency psychological consultant, Leslie Rudy, Ph.D., indicated that the claimant could perform one-to-four-step tasks with no fast pace or high production quotas, *involving occasional and superficial interaction with others*, where occasional changes could be implemented gradually.

Tr. 57 (emphasis added). Muoio claims that the ALJ "did not even once recognize the opinion" and wonders if the ALJ "overlooked the opinion entirely." Doc. 7, at 9. But as is evident from the quoted passage, the ALJ

recognized that Dr. Zeune limited Muoio to no contact with the public and superficial interaction with others and that Dr. Rudy limited Muoio to occasional and superficial interaction with others. Tr. 57. So Muoio's assertion that the ALJ failed to "recognize" the opinions is belied by the record.

Later in this same paragraph, the ALJ specifically addressed the psychologists' social limitations:

> The claimant has reported anxiety in groups (4E/6). However, he has no legal history (5F/40), is discernibly able to function in public spaces, as when he walks his dogs (3F/10), (8F/10), or plays basketball (3F/14). He socializes with his father and uncle (3F/17), initiated a romantic relationship during the period relevant to this claim (3F/18), and is typically described in the record in "pro-social" terms: with a normal affect (1F/6), (2F/10), (4F/2), or with normal behavior and an appropriate affect (3F/31), (5F/11), (8F/6, 12). This faculty persists, even if he is discernibly symptomatic of mood (3F/16), (5F/15), (8F/8, 18). *Provided the frequency of his interaction with others is controlled*, the evidence shows he has retained sufficient, residual, social function to engage in competitive work.

Tr. 58 (emphasis added). Muoio contends that "the ALJ was required to provide an explanation supporting [his] conclusion" and "did not do that here." Doc. 7, at 9; Doc. 10. But that is exactly what the ALJ did in the passage above—he provided an explanation and supported his conclusions with citations to the record. Tr. 58.

Muoio submits that it is "unclear which opinions were persuasive and which were unpersuasive." Doc. 7, at 9; *id.* at 10. Not so. The ALJ continued:

18

> The opinion of Dr. Zeune overstates the claimant's cognitive capacity, his social and adaptive limitations. The opinion of Dr. Rudy overstates the claimant's cognitive capacity [up to four step tasks] and limitations [no fast pace or high production]. He overstates the claimant's social and adaptive limitations. These opinions remain, as regards the types, if not the degree, of limitations that might be expected in the workplace, at least partially consistent with, and supported by, the overall evidence of record and so are partially persuasive.

Tr. 58. Here, the ALJ explained that the psychologists overstated Muoio's cognitive abilities, and as a result the ALJ found Muoio to be more limited than the psychologists opined. Tr. 54, 58. The ALJ wrote that the psychologists overstated Muoio's social and adaptive limitations, and as a result found Muoio to be less limited than the psychologists opined. Tr. 54, 58. So it is clear which opinions the ALJ found persuasive and unpersuasive, and why. *See also* Tr. 56 (ALJ explaining that Muoio's mental impairments "have generally been assessed as controlled"; medications were effective; objective exam findings "have consistently, albeit not universally, reported either mildly adverse, or benign findings"; and that activities of daily living indicated that Muoio's symptoms were not as severe as alleged; and that these findings support the mental limitations in the RFC); *see also* Tr. 57 (ALJ commenting that Muoio's "behavioral health treatment notes indicate that he doesn't want motivation (5F/18), or to change (5F/30), suggesting at least an equal chance that his symptoms are directed by preference rather than pathology.").

Finally, the Commissioner submits that even if it could be said that the ALJ erred, any error would be harmless because the vocational expert testified that an individual limited to occasional *and* superficial contact with others could still perform the jobs identified at the hearing. Doc. 9, at 8. This is true— the vocational expert testified that if the hypothetical individual described by the ALJ (and in the RFC) was also limited to superficial interaction with others, that individual could still perform the three jobs that the vocational expert identified. Tr. 92.

Muoio disagrees with the Commissioner's portrayal of the hearing testimony.[7] He argues that "[o]n cross-examination, the vocational witness testified that if an individual was limited to superficial interaction then Mr. Muoio would not be able to sustain competitive employment." Doc. 10, at 2–3 (citing Tr. 95). But Muoio mistakes the vocational expert's testimony. When the ALJ questioned the vocational expert about an added superficial-interaction limitation, the ALJ defined superficial as "no more than just cursory interactions." Tr. 92. The vocational expert said that such an individual with this so-described additional limitation could still perform the jobs that the vocational expert had identified. Tr. 92. Muoio's attorney then changed the definition of superficial. The attorney "further define[d] the [term] superficial," asking whether, "if we're talking about cursory such as limited

---

[7]     But Muoio does not disagree that a harmless error analysis could apply here. *See, generally*, Doc. 10.

interaction such as exchanging basic greetings, … that would preclude the ability to sustain competitive work activity?" Tr. 95. Based on *that* definition, the vocational expert said that "[i]f that's the only type of interaction they could deal with, then yes, it would [be work preclusive] because that … would be much less than superficial interaction." Tr. 95. But Muoio has not shown that his preferred definition of *superficial* is controlling either in the social security context or in the general understanding of the meaning of the word *superficial*. In short, even if the ALJ erred, which he did not, any error would be harmless.

### Conclusion

For the reasons explained above, I recommend that the Court affirm the Commissioner's decision.

Dated: May 7, 2025

 */s/ James E. Grimes Jr.*
 James E. Grimes Jr.
 U.S. Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).