## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Mariono J. Muoio,** | **Case No. 4:24CV2175** |
| **Plaintiff,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| | **Magistrate Judge James E. Grimes, Jr.** |
| **Commissioner of Social Security** | |
| | **MEMORANDUM OPINION AND** |
| **Defendants.** | **ORDER** |

This matter is before the Court on the Objection of Plaintiff Mariono Muoio ("Plaintiff" or "Muoio") to the Report and Recommendation of Magistrate Judge James E. Grimes, Jr. regarding Plaintiff's request for judicial review of Defendant Commissioner of the Social Security Administration's ("Defendant" or "Commissioner") denial of his applications for Child's Insurance Benefits ("CIB") and  Supplemental Security Income ("SSI") under the Social Security Act.  (Doc. No. 12.)  For the following reasons, Plaintiff's Objection is overruled, the Report & Recommendation ("R&R") is accepted, and the Commissioner's decision is affirmed.

## I.      Procedural History

In August and September 2022, respectively, Muoio filed his applications for CIB and SSI, alleging a disability onset date of February 17, 2021.  (Doc. No. 6 (Transcript ["Tr."] ) at 49. )  The applications were denied initially and upon reconsideration, and Muoio requested a hearing before an administrative law judge ("ALJ").  (*Id*.)  On January 22, 2024, the ALJ conducted a telephonic hearing at which Muoio was represented by counsel and testified.  (*Id*.)  *See also* Tr. 72-98.  A vocational expert ("VE") also testified.  (*Id*.)

On March 4, 2024, the ALJ found that Muoio was not disabled.  (Tr. 49-60.)  The ALJ determined that Muoio suffered from the severe impairments of obesity, Crohn's disease/irritable bowel syndrome, major depressive disorder, anxiety disorder - unspecified, and autism.  (Tr. 52.)  The ALJ found that Muoio's impairment did not meet or medically equal the requirements of a listed impairment and that he retained the residual functional capacity ("RFC") to perform medium work but with the following non-exertional limitations:  he "is limited to the performance of simple, routine tasks and to the making of no more than simple, work-related decisions, conducted in a work setting that requires no more than occasional interaction with co-workers, supervisors, or the public, which setting is routine, in that it contemplates few changes."  (Tr. 52-54.)  The ALJ then concluded that Muoio could perform certain jobs that exist in significant numbers in the national economy and, therefore, was not disabled.  (Tr. 58-59.)  The Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1-4.)

Muoio seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c).  (Doc. No. 1.)  The case was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.2(b)(1) for a Report and Recommendation.  In the R&R, the Magistrate Judge concludes that the ALJ's decision is supported by substantial evidence and recommends that the decision be affirmed.  (Doc. No. 11.)  On May 21, 2025, Muoio filed the following Objection to the R&R:

I.      The ALJ failed to account for the limitations opined by the State Agency Mental Health Reviewing Experts

(Doc. No. 12.)  The Commissioner filed a Response on May 22, 2025.  (Doc. No. 13.)  The Court has conducted a *de novo* review of the issues raised in Plaintiff's Objection.

## II.    Relevant Medical and Opinion Evidence[1]

Muoio was born in 2003 and was eighteen (18) years old on his alleged disability onset date. (Tr. 58.)  He graduated from high school and has no past relevant work.  (Tr. 80.)  In January 2022, Muoio was diagnosed with anxiety disorder, major depressive order, and autistic disorder.  (Tr. 423, 456.)  The record reflects that, between January 2022 and January 2024, he received mental health treatment in the form of therapy and medication.  *See, e.g.*, Tr. 380-402, 408-459, 491-510.

On December 16, 2022, state agency psychological consultant Courtney Zeune, Psy.D., completed a Psychiatric Review Technique ("PRT") (Tr. 102) and Mental RFC Assessment (Tr. 104-105).  In the PRT, Dr. Zeune found that Muoio had: (1) no limitations in understanding, remembering, or applying information; (2) moderate limitations in adapting or managing himself; (3) moderate limitations in interacting with others; and (4) moderate limitations in concentrating, persisting, or maintaining pace.  (Tr. 102.)

In the Mental RFC, Dr. Zeune offered a series of opinions regarding Muoio's mental functional limitations based on her review of Muoio's medical records.  Relevant herein, Dr. Zeune opined that Muoio was "moderately limited" in his abilities to: (1) maintain attention and concentration for extended periods; (2) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (3) accept instructions and respond appropriately to

---

[1] The Magistrate Judge's thorough recitation of the medical and opinion evidence need not be repeated in full and is incorporated herein.  Rather, for purposes of this Opinion, the Court recites only that evidence which is necessary to resolution of the instant Objection.

3

criticism from supervisors; and (4) respond appropriately to changes in the work setting.[2]  (Tr. 105.)

Dr. Zeune also opined that Muoio was "markedly limited" in his ability to interact appropriately with

the general public.  (*Id*.)  In the narrative portion of the form, Dr. Zeune explained that Muoio "retains

the ability to complete moderately complex tasks in a routine work environment with no contact with

the general public and superficial contact with others" and that "changes should be explained in

advance." (Tr. 105.)

On April 23, 2023, on reconsideration, state agency psychological consultant Leslie Rudy,

Ph.D., agreed with Dr. Zeune's PRT (Tr. 122.)  However, on June 1, 2023, Dr. Rudy assessed

Muoio's Mental RFC differently than Dr. Zeune in certain respects.  (Tr. 124-125.)  Specifically, Dr.

Rudy found that, in addition to the moderate limitations assessed by Dr. Zeune (*supra*), Muoio was

also "moderately limited" in his abilities to: (1) carry out detailed instructions; (2) perform activities

within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3)

work in coordination with or in proximity to others without being distracted by them; and (4) get

along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (Tr. 124.)

In addition, while Dr. Zeune opined that Muoio was "markedly limited" in his ability to interact

appropriately with the general public, Dr. Rudy found that he was "moderately limited" in this

category.  (*Id*.)  Lastly, in the narrative portion of the form, Dr. Rudy explained that Muoio is able to

carry out 1 to 4 step tasks in a setting without demands for unusually fast pace or high production;

---

[2] Dr. Zeune also opined that Muoio was "not significantly limited" in his abilities to: (1) carry out very short and simple instructions; (2) carry out detailed instructions; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) sustain an ordinary routine without special supervision; (5) work in coordination with or in proximity to others without being distracted by them; (6) make simple work-related decisions; (7) ask simple questions or request assistance; (8) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (9) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; (10) be aware of normal hazards and take appropriate precautions; (11) travel in unfamiliar places or use public transportation; and (12) set realistic goals or make plans independently of others.  (Tr. 105.)

"interact on an occasional and superficial basis;" and adapt to occasional changes which are implemented gradually.  (Tr. 124-125.)

### III.    The Hearing and the ALJ Decision

#### A.    Relevant Hearing Testimony

 The ALJ conducted a telephonic hearing on January 22, 2024.  (Tr. 72-98.)  Among other things, Muoio testified that he had graduated from high school but that he did not have a driver's license and had no past relevant work.  (Tr. 80.)  He testified that he lived at home with his parents and "pretty much stay[ed] in bed all day."  (Tr. 79, 83.)  Muoio explained that the only people he really gets along with are his parents and that, when he is around others, he usually doesn't speak and keeps to himself.  (Tr. 83.)

Muoio testified that he had about two panic attacks a week triggered by stressful events like going to the doctor.  (Tr. 84.)  He testified that he attended counseling twice a month, which helped "a little bit." (Tr. 85.)  Muoio confirmed that he takes mental health medication but indicated that it was not helpful.  (*Id*.)  He testified that he did not perform household chores, struggled with personal hygiene, and could not perform any type of quick errand in the community.  (Tr. 86.)  Muoio testified that he previously played basketball and had a girlfriend that he had met online, but that his only current social activity was going to his uncle's house once a week.  (Tr. 86-87.)  He also indicated that he had "suicidal types of thoughts" multiple times a week and that he had cut himself in the past. (Tr. 88-89.)  Muoio explained that he sleeps at least four hours or so during the day.  (Tr. 89.)  He was "not sure" if there was any kind of work that he could do on a regular basis.  (*Id*.)

Importantly, the ALJ then posed the following hypothetical questions to the VE:

Q:    And you've already determined there's no past work to consider, so I'm going to go directly to hypotheticals today. And for my first hypothetical, I'd like

5

you to presume an individual of the same age, educational background and work experience as the Claimant. I'd like you to presume the individual can perform the full range of medium work subject to the following limitations. The individual would be limited to the performance of simple, routine tasks and simple work related decisions, and limited to occasional interactions with supervisors, coworkers, or the general public. The individual can tolerate few changes in a routine work setting. Are there jobs in the national economy such an individual could perform?

A:      Yes there are, Your Honor. There would be work at all levels; would be limited to unskilled work, simple routine tasks. Some examples at the medium level, again all medium, SVP 2. We have order puller, DOT 922.687-058, there are approximately 200,000 jobs in the national economy. A second example would be hand packager, DOT is 920.586-010, there are approximately 300,000 jobs in the national economy. And a third example would be laundry laborer, DOT is 361.687-018, there are approximately 160,000 jobs in the national economy.

Q:      **Okay for my second hypothetical, I'd like you to consider all the same circumstances of the first hypothetical. But here I'd like you to presume that the individual is limited to occasional and superficial interactions with supervisors, coworkers or the general public with that being defined as no more than just cursory interactions with those individuals. Are there jobs in the national economy that this individual could perform?**

A:      **Yes, there are. The examples given previously would still apply**.

(Tr. 91-92) (emphasis added). Later, Muoio's counsel asked the VE the following questions relating to the ALJ's second hypothetical:

Q:      Okay. And with regards to interaction between workers and supervisors for things such as task direction, constructive criticism, explanation, job performance evaluation, things of that nature, does that sort of interaction generally take place at the time and discretion of the supervisor or the worker?

A:      I believe it varies. It's hard to pinpoint the frequency or the duration of those kinds of communications but if they are to a point where they're disruptive or not a meeting goal between a supervisor and the employee, it would be difficult to maintain employment.

Q:      Okay. All right. And as far as for like say a performance evaluation between a supervisor and a worker, in your opinion that wouldn't require anything above cursory with regards to the quality of interaction?

6

A:  Again, it's -- it's hard to pinpoint but the -- the supervisors are in charge. They determine the -- the workload and the various variables of the job, and if the employee cannot follow within those parameters it would be difficult to maintain employment.

Q:  The only reason I was asking is the Judge had added a limitation for occasional and superficial interaction that included the supervisors, or unless I misunderstood first hypothetical #2. And you had indicated that would not cause any change in your prior job examples.  So I was just trying to understand how that would work in a work setting if somebody couldn't have more than cursory interaction with regards to quality with the supervisor.

A:  I think in the unskilled jobs it's a little bit more tolerable, but the -- the interaction should still be, you know, within normal agreeable limits that they can take criticism, follow directions, and if that can't happen there would be difficulty maintaining the job.

Q:  Okay. And if we were to further define the superficial when we're talking about cursory if we're talking about cursory such as limited interaction such as exchanging basic greetings, if it were defined in that sense would I be correct that would preclude the ability to sustain competitive work activity?

A:  If that's the only type of interaction they could deal with, then yes, it would, because that -- that would be much less than superficial interaction.

(Tr. 94-95.)  Upon further questioning from counsel, the VE testified that none of the three representative jobs he had identified would involve coordinating or leading others, being responsible for the work outcomes and results of other workers, or working with others in a group or team.  (Tr. 96-97.)  The VE testified that this was because the jobs he had identified (i.e., order puller, hand packager, and laundry laborer) involved "simple, routine tasks" and were "at superficial interaction."  (Tr. 96.)

## B.  The ALJ Decision

On March 4, 2024, the ALJ issued a decision, finding that Muoio is not disabled.  (Tr. 49-60.)  Relevant here, the ALJ found that Muoio's major depressive disorder, anxiety disorder, and autism

7

constituted severe impairments.  (Tr. 52.)  He further determined that, while these impairments caused

moderate limitations in certain respects, they did not (considered singly and in combination) meet or

medically equal the criteria of a listed impairment under social security regulations.  (Tr. 52-54.)

The ALJ then proceeded to assess Muoio's RFC.  The ALJ first discussed Muoio's subjective

complaints and medical records, including those relating to his mental health impairments.  Among

other things, the ALJ noted that Muoio followed "a regimen of psychotropic medications" and that

these medications "are reported as effective ..., and [his mental health] impairments have generally

been assessed as controlled."  (Tr. 56.)  The ALJ also noted that Muoio's mental status examinations

have "consistently, albeit not universally, reported either mildly adverse, or benign findings." (*Id.*)

In sum, the ALJ concluded that "the evidence would indicate that the symptom limitations relevant

to these impairments are not as severe as alleged."  (*Id.*)

The ALJ then discussed the opinions of Drs. Zeune and Rudy, as follows:

The state agency psychological consultant, Courtney Zeune, Psy.D., indicated that the
claimant could complete moderately complex tasks in a routine environment, with no
public contact, superficial interaction with others, where changes could be explained
in advance. The state agency psychological consultant, Leslie Rudy, Ph.D., indicated
that the claimant could perform one-to-four-step tasks with no fast pace or high
production quotas, involving occasional and superficial interaction with others, where
occasional changes could be implemented gradually.  Each of these doctors had the
opportunity to review the evidence of record, to which each cited liberally in support
of their conclusions, and each is well versed in the terminology and analytical
framework employed in the disposition of these claims.

The record shows a claimant with chronic psychological disorders which would be
expected to, and which the claimant reports (4E/7) do, interfere with his concentration
and task completion. However, the claimant is thought to be of average intellect and
to possess a normal fund of knowledge (5F/52). He is said to exhibit normal
concentration (5F/52), and is reliably reported as attentive, whether or not he is
symptomatic of mood (5F/15, 11), (8F/6, 8, 12, 18), (3F/12, 20, 31), and is said to
exhibit a coherent and logical thought process, whether or not is [sic] symptomatic of
mood (5F/15, 11), (8F/6, 8, 12, 18), (3F/12, 20, 31). Provided he is limited to the
performance of simple, routine tasks and to the making of no more than simple, work-

related decision, the evidence shows he has retained sufficient, residual, cognitive function to engage in competitive work.

The claimant has reported anxiety in groups (4E/6). However, he has no legal history (5F/40), is discernibly able to function in public spaces, as when he walks his dogs (3F/10), (8F/10), or plays basketball (3F/14). He socializes with his father and uncle (3F/17), initiated a romantic relationship during the period relevant to this claim (3F/18), and is typically described in the record in "pro-social" terms: with a normal affect (1F/6), (2F/10), (4F/2), or with normal behavior and an appropriate affect (3F/31), (5F/11), (8F/6, 12). This faculty persists, even if he is discernibly symptomatic of mood (3F/16), (5F/15), (8F/8, 18).  **Provided *the frequency* of his interaction with others is controlled**, **the evidence shows he has retained sufficient, residual, social function to engage in competitive work**.

The claimant has described a poor reaction to stressors and changes (4E/8).  However, he is reported to exhibit good insight and judgment (5F/52).  There are no indications of impulsivity, regardless of whether or not he is discernibly symptomatic of mood (5F/15, 11, 9, 5), (8F/6, 8, 12, 18).  The claimant's mental status examinations have not materially deteriorated (5F/15), compare with (8F/6), despite changes and stressors including a break-up with his girlfriend (3F/21) and his father's diagnosis/prognosis with Parkinson's disease (5F/32).  Provided he is limited to the performance of work that is simple and routine to begin with, conducted in a work setting free of the need to mull complex decisions, and, where he would not be asked to respond to constant change, the record indicates he has retained sufficient, residual, adaptive capacity to engage in competitive work.

**The opinion of Dr. Zeune overstates the claimant's cognitive capacity, his social and adaptive limitations. The opinion of Dr. Rudy overstates the claimant's cognitive capacity (up to four step tasks) and limitations (no fast pace or high production).  He overstates the claimant's social and adaptive limitations.  These opinions remain, as regards the types, if not the degree, of limitations that might be expected in the workplace, at least partially consistent with, and supported by, the overall evidence of record and so are partially persuasive.**

(Tr. 57-58) (emphasis added).  The ALJ then assessed the following RFC:  "I find that the claimant

has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and

416.967(c) except that the claimant is limited to the performance of simple, routine tasks and to the

making of no more than simple, work-related decisions, conducted in a work setting that requires no

9

more than occasional interaction with co-workers, supervisors, or the public, which setting is routine, in that it contemplates few changes."  (Tr. 54.)

Based on the testimony of the VE at the hearing, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Muoio could perform, including the representative jobs of order puller, hand packager, and laundry preparer.  (Tr. 59.)  Thus, the ALJ found that Muoio is not disabled under social security regulations.  (*Id*.)  On October 15, 2024, the Appeals Council declined to review the ALJ's decision (Tr. 1-3), making the ALJ's decision the Commissioner's final decision.

## IV.    The Report & Recommendation (Doc. No. 11)

Muoio filed a Complaint in this Court on December 16, 2024, and the case was referred to Magistrate Judge Grimes for a Report and Recommendation.  In his Brief on the Merits, Muoio emphasized that both Dr. Zeune and Dr. Rudy had opined that Muoio was limited to superficial interactions with others.  (Doc. No. 7 at PageID# 541.)  Muoio noted that, although the ALJ included a limitation to *occasional* interactions in the RFC, he failed to include a limitation to *superficial* interactions.  (*Id.*)  Muoio asserted that "there is a distinct difference between 'superficial' and 'occasional' interaction," with the former relating to the *quality* of interaction one can sustain with others and the latter relating to the *quantity or frequency* of interactions that one can sustain with others.  (*Id*. at PageID# 543.)  Muoio maintained that, because of this key difference between these terms, the ALJ was required to adequately explain why he omitted a limitation to superficial interactions from the RFC.  (*Id.* at PageID# 544.)  Instead, Muoio argued, the ALJ's reasoning was cursory making it "impossible to trace his reasoning."  (*Id*. at PageID#s 544-545.)

10

The Commissioner disagreed, arguing that the ALJ adequately explained that he found Dr. Zeune's and Dr. Rudy's opinions to be only partially persuasive and that their proposed social limitations were inconsistent with other evidence in the record.  (Doc. No. 9.)  The Commissioner further noted that, even if the ALJ erred by omitting a limitation to superficial interaction in the RFC, any error is harmless "because the vocational expert testified that the same jobs existed in the same numbers in the national economy that Plaintiff could perform even if the limitation to superficial contact with others was included in the RFC."  (*Id*. at PageID# 556.)

On May 7, 2025, Magistrate Judge issued his R&R, in which he recommended that this Court affirm the Commissioner's decision.  (Doc. No. 11.)  First, relying on *Reeves v. Comm'r of Soc. Sec.,* 618 Fed. Appx. 267 (6th Cir. 2015), the Magistrate Judge concluded that there is no inconsistency between an occasional interaction limitation and a superficial interaction limitation and, therefore, "the ALJ was not duty-bound to explain why he omitted a superficial limitation from the RFC."  (*Id*. at PageID# 578-579.)  Second, the Magistrate Judge found that, even if the term occasional could be said to be inconsistent with the term superficial, Muoio "has not shown that the ALJ failed to explain why he omitted a superficial limitation."  (*Id*. at PageID#s 579-581.)  Lastly, the Magistrate Judge found that, even if the ALJ erred, any such error would be harmless[3] because the VE expressly testified that if the hypothetical individual described by the ALJ (and in the RFC) was also limited to superficial interaction with others, that individual could still perform the three jobs that the VE had identified.  (*Id*. at PageID#s 582-583.)

---

[3]  The Magistrate Judge noted that "Muoio does not disagree that a harmless error analysis could apply here."  (*Id*. at PageID# 582, fn 7.)

11

Muoio filed an Objection to the R&R on May 21, 2025, to which the Commissioner responded on May 22, 2025. (Doc. Nos. 12, 13.)

## V. Standards of Review

### A. Review of Objections to R&R

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926 at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to *de novo* review by the district court in light of specific objections filed by any party.") (citations omitted); *Orr v. Kelly*, 2015 WL 5316216 at *2 (N.D. Ohio Sept. 11, 2015) (citing *Powell*, 1994 WL 532926 at *1). *See also* Fed. R. Civ. P. 72(b)(3). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. §636(b)(1).

The Sixth Circuit has held that general objections to a Magistrate Judge's report and recommendation are insufficient. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir.1995). *See also Brown v. City of Grand Rapids, Michigan*, 2017 WL 4712064 (6th Cir. 2017). "A general objection, or one that merely restates the arguments previously presented, is not sufficient to alert the court to alleged errors on the part of the magistrate judge." *Aldrich v. Bock,* 327 F.Supp.2d 743, 747 (E.D. Mich. 2004). Rather, "[t]he objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller,* 50 F.3d at 380 (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508–09 (6th Cir.1991)). "'[B]are disagreement with the conclusions reached by the Magistrate Judge, without any effort to identify any specific errors in the Magistrate

12

Judge's analysis that, if corrected, might warrant a different outcome, is tantamount to an outright failure to lodge objections to the R&R.'" *Arroyo v. Comm'r of Soc. Sec.*, 2016 WL 424939 at *3 (E.D. Mich. Feb. 4, 2016) (quoting *Depweg v. Comm'r of Soc. Sec.*, 2015 WL 5014361 at *1 (E.D. Mich. Aug. 24, 2015)) (citing *Howard*, 932 F.2d at 509).

Moreover, parties cannot "raise at the district court stage new arguments or issues that were not presented" before the magistrate judge's final report and recommendation. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) ("Courts have held that while the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate."). *See also Swain v. Comm'r of Soc. Sec.*, 379 Fed. Appx 512, 517-18 (6th Cir. 2010) ("A claim raised for the first time in objections to a magistrate judge's report is deemed waived."); *Nasser v. Comm'r of Soc. Sec.,* 598 F.Supp.3d 614, 621 (E.D. Mich. 2022), *aff'd,* 2022 WL 17348838 (6th Cir. Dec. 1, 2022).

**B.    Review of Social Security Decisions**

Under the Social Security Act, a disability renders the claimant unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can result in death or that can last at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The impairment must prevent the claimant from doing the claimant's previous work, as well as any other work which exists in significant numbers in the region where the individual lives or in several

13

regions of the country.  42 U.S.C. § 423(d)(2)(A).  Consideration of disability claims follows a five-step review process.[4] 20 C.F.R. § 404.1520.

The Court's review of the Commissioner's decision to deny benefits is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.  42 U.S.C. § 405(g). "Substantial evidence is 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McGlothin v. Comm'r of Soc. Sec.*, 299 Fed. Appx. 516, 521 (6th Cir. 2008) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal citation omitted)).

If substantial evidence supports the Commissioner's finding that the claimant is not disabled, that finding must be affirmed even if the reviewing court would decide the matter differently. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citation omitted).  A reviewing court is not permitted to resolve conflicts in evidence or to decide questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted). Moreover, the Commissioner's

---

[4] Under this five step review, the claimant must first demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) and 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d).  Before considering step four, the ALJ must determine the claimant's residual functional capacity; i.e., the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 416.930(e).  At the fourth step, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).  *See Abbot*, 905 F.2d at 923.

14

decision must be affirmed even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).

## VI.    Plaintiff's Objection to the R&R

Muoio first objects to the Magistrate Judge's conclusions that there is no inconsistency between the terms occasional and superficial and, therefore, the ALJ was not required to explain why he omitted a limitation to superficial interactions from the RFC.  (Doc. No. 12.)  Muoio argues that the Magistrate Judge misinterpreted *Reeves*, *supra*, asserting that the Sixth Circuit did not find, in that case, that the terms superficial and occasional are interchangeable but rather simply found that there was no inconsistency between the state agency psychologists' opinions and the RFC in that specific case.  (*Id.*)  Muoio maintains that the instant case is more analogous to *Kinney v. Comm'r of Soc. Sec.*, 2024 WL 2273365 (6th Cir. 2024), in which the Sixth Circuit found that an ALJ erred by failing to explain why he omitted from the RFC a state agency physician's opinion that the plaintiff required flexible break schedules.  (*Id.*)  Muoio argues that the ALJ likewise erred here because Drs. Zeune and Rudy both limited him to superficial interaction with coworkers and supervisors and that, despite finding that these opinions to be partially persuasive, the ALJ failed to explain why he omitted a superficial interaction limitation from the RFC.  (*Id.*)

In support of this Objection, Muoio cites a slew of district court decisions (both from within and outside of this Circuit) in which courts have "acknowledged the significant difference and distinction between the terms 'superficial interaction' and 'occasional interaction.'"  (*Id.* at PageID#s 588-591.)  Lastly, Muoio relies on an Appeals Council decision that was apparently issued in a different case, in which an Administrative Appeals Judge concluded that the term "superficial

interaction" is "distinguishable and distinct from" the term "occasional interaction," with the former relating to "the depth, kind and quality of social interactions" and the latter relating to the "frequency of interaction with others." (*Id*. at PageID# 591.) Based on the above, Muoio argues that the terms superficial and occasional are distinct terms with different meanings, and that the Magistrate Judge erred in finding to the contrary and on that basis concluding that the ALJ was not required to explain why he omitted a limitation to superficial interactions with coworkers and supervisors from the RFC.

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e), 416.920(e). When there is an opinion from a medical source or prior administrative medical finding about a claimant's capabilities, an ALJ must explain how persuasive the ALJ finds that opinion or finding.[5] *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). *See also Reeves*, 618 Fed. Appx at 275. Importantly, "[a]n ALJ need not incorporate every limitation from a medical source's recommendation, even if it finds that medical source to be persuasive." *Kinney,* 2024 WL 2273365 at * 3. *See also Reeves*, 618 Fed. Appx at 275 ("[E]ven where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinion verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."); *Poe v. Comm'r of Soc. Sec*., 342 Fed. Appx 149, 157 (6th Cir. 2009) (finding that, when assessing a claimant's RFC, an ALJ "is not required to recite the medical opinion of a physician verbatim in [her] residual functional capacity finding… [and] an ALJ does not improperly

---

[5] The ALJ considers five factors to determine persuasiveness: (1) supportability; (2) consistency; (3) the source's relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship; (4) the source's specialization; and (5) any other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The regulations require the ALJ to "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions." *See id*. at §§ 404.1520c(b)(2), 416.920c(b)(2).

16

assume the role of a medical expert by assessing the medical and nonmedical evidence before rendering a residual functional capacity finding.")

However, under Social Security Ruling ("SSR") 96-8p, if the ALJ's "RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." SSR 96-8p, Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at * 7 (July 2, 1996). *See also Echevarria v. Comm'r of Soc. Sec.*, 2025 WL 3470314 at * 6 (N.D. Ohio Dec. 3, 2025); *Bobak v. Comm'r of Soc. Sec.*, 2025 WL 2664461 at * 11 (N.D. Ohio Sept. 18, 2025), *report and recommendation adopted by* 2026 WL 281039 (N.D. Ohio Feb. 3, 2026). The reasons for the ALJ's conclusions about the medical opinions must be stated in a manner that allows the reviewing court to "trace the path of the ALJ's reasoning" from evidence to conclusion. *Stacey v. Comm'r of Soc. Sec.*, 451 Fed. Appx 517, 519 (6th Cir. 2011).

In the instant case, Muoio objects to the Magistrate Judge's conclusion that the ALJ was not required, under SSR 96-8p, to explain why he omitted a limitation to superficial interactions in the RFC, because there is no conflict between the terms superficial and occasional. As discussed below, district courts in this Circuit are divided on this issue.

The first step in determining whether there is a conflict between the terms superficial and occasional is examining the meaning of each of those terms. The Social Security Administration ("SSA") has defined certain terms and concepts that are often used in evaluating disability, including (notably) the term occasional, which is defined as meaning "from very little up to one-third of the time." SSR 83-10, 1983 WL 31251 at * 5 (Jan. 1, 1983). The SSA has not, however, defined the term superficial, in either the Social Security Act or any of its corresponding regulations, SSRs, policies, or manuals. *See, e.g., Bobak*, 2025 WL 2664461 at * 10; *Tammy W. v. Comm'r of Soc. Sec.*,

2024 WL 4284251 at * 4 (S.D. Ohio Sept. 25, 2024). Moreover, although the Dictionary of Occupational Titles ("DOT") defines numerous vocational terms related to interacting with others (including "mentoring," "negotiating," "instructing," "supervising," "diverting," "persuading," "speaking-signaling," "serving," and "taking instructions-helping"), it does not define the term "superficial" as it may relate to any of those terms. *See Bobak,* 2025 WL 2664461 at * 11 (citing DOT, App'x B, http://occupationalinfo.org/appendxb1.html). *See also Stoodt v. Comm'r of Soc. Sec.*, 2022 WL 721455 at * 16-17 (N.D. Ohio Jan. 13, 2022), *report and recommendation adopted by* 2022 WL 716105 (N.D. Ohio Mar. 10, 2022) (noting that neither the DOT nor the Selected Characteristics of Occupations ("SCO") define the term "superficial").

In his Objection, Muoio argues that that the Appeals Council has not only defined the term superficial, but has concluded that the terms superficial and occasional are definitionally distinct. (Doc. No. 12 at PageID# 591.) In support of this argument, Muoio directs this Court's attention to a redacted copy of an Appeals Council decision ("the AC Decision") dated July 27, 2022, in which an Administrative Appeals Judge discusses the meaning of the terms superficial and occasional interaction in the context of a different, unidentified claimant's social security application.[6] (*Id*.) For the following reasons, Muoio's argument is without merit.

---

[6] The record reflects that Muoio submitted a redacted copy of the AC decision to the ALJ during the administrative proceedings below. (Tr. 331.) Although redacted, it is clear that the AC decision involves a different claimant. (Tr. 332-335.) In the AC Decision, Administrative Appeals Judge Sunmee Jo discusses the opinions of two state agency psychologists who opined (in relevant part) that the claimant in that case should be limited to "no more than occasional, superficial interaction with others." (Tr. 334-335.) The ALJ had found these opinions to be "mostly persuasive," but rejected the opinion that the claimant needed no more than superficial interaction with others on the grounds that the term superficial interaction "is not a vocationally proper term." (*Id*.) The Administrative Appeals Judge disagreed, finding as follows: "'[S]uperficial interaction' is a term that is readily defined, understood and applicable to a work setting, as it speaks to the depth, kind and quality of social interactions, and indicates that the claimant could not have sustained more than shallow or cursory interactions with others, i.e., coworkers, the general public, and/or supervisors. This term is distinguishable and distinct from 'occasional' which describes the frequency of interaction with others and how much interaction the claimant could tolerate on a sustained basis." (*Id*.)

First, the Court notes that Muoio failed to cite or otherwise bring the AC Decision to the attention of the Magistrate Judge, either in his opening Brief on the Merits or his Reply Brief.  (Doc. Nos. 7, 10.)  Nor did Muoio otherwise argue, at any point before the Magistrate Judge, that the Appeals Council had defined the term superficial and/or determined in a binding decision that the terms superficial and occasional were distinct terms with different meanings.  (*Id*.)  The Court finds that, by failing to raise this argument before the Magistrate Judge, Muoio forfeited it for purposes of the instant Objection.  *See Murr*, 200 F.3d at 902, n.1.  Moreover, even assuming *arguendo* that Muoio had not forfeited this argument, the Court would nonetheless find it to be without merit. Numerous district courts within this Circuit have rejected the argument that the AC Decision at issue herein constitutes binding authority in unrelated social security appeals. *See Bobak*, 2025 WL 2664461 at * 10 ("The Appeals Council's definition in a remand order for [an] unrelated case does not constitute an official definition by the SSA that is binding on it at large or on this Court.") (collecting cases);  *Dallas B. v. Comm'r of Soc. Sec.*, 2025 WL 3710871 at * 5 (S.D. Ohio Nov. 7, 2025) (same), *report and recommendation adopted by* 2025 WL 3709000 (S.D. Ohio Dec. 22, 2025); *Jared W. v. Comm'r of Soc. Sec.*,  2022 WL 17842947 at *6 (S.D. Ohio Dec. 22, 2022), *report and recommendation adopted by* 2023 WL 1960600 (S.D. Ohio Feb. 13, 2023) (same).  The Court agrees and, accordingly, finds Muoio's reliance on the AC Decision to be misplaced.

In the absence of an established definition of the term superficial, district courts within this Circuit remain divided over whether there is a conflict between the terms superficial and occasional in the context of social interaction limitations.  Relying on the Sixth Circuit's decision in *Reeves,*[7]

---

[7] In *Reeves*, two state agency psychologists opined that the plaintiff was moderately limited in his ability to interact appropriately with the public and is "able to relate to a few familiar others on a superficial basis." *Reeves*, 618 Fed. Appx. at 275.  The ALJ assigned their opinions "great weight," but then translated the opinions that plaintiff could "relate to a

some district courts have found that the term occasional does not conflict with the term superficial (particularly in the context of unskilled work) and therefore an ALJ need not explain his or her reasons for applying one term over the other. *See, e.g., Stephen D. v. Comm'r of Soc. Sec.*, 734 F.Supp.3d 729, 739 (S.D. Ohio 2024); *Martin v. Comm'r of Soc. Sec.*, 2025 WL 3153381 at * 2 (W.D. Mich. Nov. 12, 2025); *Chermagne W. v. Comm'r of Soc. Sec.,* 2025 WL 1993507 at * 6-7 (S.D. Ohio July 17, 2025).

Other district courts, however, have held that the terms are not interchangeable because occasional relates to the frequency or quantity of time a claimant spends interacting with others, whereas superficial relates to the quality of the interactions.[8]  *See, e.g., Hutton v. Comm'r of Soc. Sec.*, 2020 WL 3866855 at * 4 (S.D. Ohio July 9, 2020), *report and recommendation adopted by,*

---

few...on a superficial basis" into an RFC limitation to "only occasional interaction with the public." *Reeves v. Colvin*, 2014 WL 4675321 at *4, 8 (N.D. Ohio Sept. 18, 2014).  Before both the district court and the Sixth Circuit, the plaintiff argued that the RFC limitation to occasional interaction was inconsistent with the ALJ's acceptance of the psychologists' opinions limiting plaintiff to superficial interactions.  The Sixth Circuit rejected that argument as "without merit," concluding that "the ALJ's mental RFC determination was supported by substantial evidence in the record and *is not inconsistent with either of the state agency psychologists' opinions*." *Id*. (emphasis added).

[8] A recent decision of the Sixth Circuit (which was issued after the R&R herein) may lend some support to this latter view.  In *Mabry-Schlicher v. Comm'r of Soc. Sec*., 2025 WL 1604376 (6th Cir. June 6, 2025), the district court had previously remanded the case to the ALJ on the grounds that the ALJ had improperly rejected the opinions of state agency psychologists that plaintiff was limited to superficial contact as "vocationally irrelevant;" and instead only limited plaintiff to occasional interaction with coworkers and supervisors.  *Id*. at *2.  On remand, the ALJ included a limitation in the RFC to "superficial contact," which the ALJ defined as "retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice."  *Id*.  On appeal, plaintiff argued that the ALJ had failed to comply with the district court's remand order and that the ALJ's definition of "superficial contact" was impermissibly narrow.  The Sixth Circuit rejected both arguments.  First, the Sixth Circuit rejected the argument that the ALJ had failed to comply with the remand order, noting that "the social restrictions [in the superficial contact limitation] relate to the quality and character of social interaction, rather than mere duration of interaction, and thus comport with the remand order." *Id*. at * 4. The Sixth Circuit then rejected the plaintiff's argument that the ALJ's "superficial contact" limitation was overly narrow, finding that the term superficial is undefined by social security regulations and guidance and that "[l]acking extensive guidance, the ALJ delineated specific social restrictions based on his understanding of what a 'superficial contact' limitation requires in this context."  *Id*. at * 5.  Although the Sixth Circuit does not directly address the issue of whether superficial and occasional are distinct terms with different meanings, it does appear to recognize a distinction between the terms superficial and occasional, i.e., that the term superficial interaction relates to the *quality* of interactions, as opposed to (and distinct from) "mere *duration* of interaction," which is often associated with occasional interaction.  *Id*. at * 4.

2020 WL 4334920 (S.D. Ohio July 28, 2020); *William H. v. Comm'r of Soc. Sec.*, 2022 WL 4591304 at * 5 (S.D. Ohio Sept, 30, 2022); *Lindsey v. Comm'r Soc. Sec.*, 2018 WL 6257432 at *4 (S.D. Ohio Nov. 30, 2018).

The Court need not decide this issue. Even assuming *arguendo* that there is a conflict between the terms superficial and occasional, the Court agrees with the Magistrate Judge that the ALJ adequately explained his reasons for omitting a limitation to superficial contact with coworkers and supervisors from the RFC for the reasons set forth below.

In his decision, the ALJ expressly acknowledged Dr. Zeune's opinion that Muoio is limited to superficial interaction with others, as well as Dr. Rudy's opinion that Muoio is limited to occasional and superficial interaction with others. (Tr. 57.) The ALJ explained, however, that he found that Dr. Zeune's and Dr. Rudy's opinions "overstate[d] [Muoio's] social and adaptive limitations," and were only "partially persuasive." (Tr. 58.) The ALJ noted that Muoio (1) had no legal history; (2) was "discernibly able to function in public spaces," (3) socialized with his father and uncle; (4) had initiated a romantic relationship during the period relevant to his claim; and (5) was typically described in the record in "pro-social" terms, i.e., with normal affect, normal behavior, etc. (*Id.*) Moreover, earlier in the decision, the ALJ noted that Muoio "follows a regimen of psychotropic medications," which have been "reported as effective." (Tr. 56.) The ALJ further indicated that Muoio's medical records show that his mental impairments "have generally been assessed as controlled" and that "mental status examinations included in the evidence have consistently, albeit not universally, reported either mildly adverse, or benign findings." (*Id.*)

Notably, the ALJ then explained that "[p]rovided the frequency of [Muoio's] interactions with others is controlled, the evidence shows he has retained sufficient, residual, social function to

21

engage in competitive work." (Tr. 58) (emphasis added). As noted *supra,* the term "occasional" is defined in social security guidance as meaning "from very little up to one-third of the time", i.e., in terms of the quantity or frequency of interactions. *See* SSR 83-10, 1983 WL 31251 at * 5. The Court finds that, by stating that Muoio could engage in competitive work "provided the frequency of his interactions with others is controlled," the ALJ adequately explained that he agreed with Dr. Rudy's opinion that Muoio was limited to occasional contact with others, but that he did not agree with Dr. Zeune's and Dr. Rudy's opinions that he was also limited to superficial contact with others. Muoio does not make any meaningful argument to the contrary.

In sum, while it might have been preferable if the ALJ had more explicitly addressed his decision to omit a limitation to superficial contact, the Court finds that, reading the decision as a whole, the ALJ provided sufficient explanation to allow this Court to trace the path of his reasoning. *See Stacey,* 451 Fed. Appx at 519. Accordingly, the Court finds that, even if there is a conflict between the terms superficial and occasional, remand is not required because the ALJ adequately explained why he omitted a limitation to superficial contact with coworkers and supervisors from the RFC.

Lastly, and as noted above, the Magistrate Judge found that, even assuming the ALJ had not adequately explained why he omitted a limitation to superficial contact, any error in this regard would be harmless since the VE testified that, even if the hypothetical individual described by the ALJ (and in the RFC) was also limited to superficial interaction, the individual could still perform the three jobs that the VE had identified. (Tr. 91-92.) Muoio objects to the Magistrate Judge's conclusion that any error was harmless. (Doc. No. 12 at PageID#s 593-594.) He maintains that the ALJ failed to define the term superficial before offering the second hypothetical to the VE and, therefore, the VE's

testimony "about whether someone limited to 'superficial' interaction could sustain work is unreliable as it is completely unclear as to what definition" the VE was applying to the term. (*Id*.) Muoio further asserts the AC Decision provides a definition of "superficial" and that, based on this definition, the VE "found that an individual would be unable to sustain employment." (*Id*.) Thus, Muoio argues that the ALJ's error was not harmless and remand is required.

Muoio's Objection is without merit. As set forth *supra,* the ALJ did, in fact, provide a definition of the term superficial to the VE during the hearing. Specifically, the ALJ asked the VE to "consider all the same circumstances of the first hypothetical" but "to presume that the individual is limited to occasional and superficial interactions with supervisors, coworkers or the general public **with that being defined as no more than just cursory interactions with those individuals**." (Tr. 92)(emphasis added). Thus, the ALJ clearly defined the term superficial for purposes of the VE's vocational testimony.[9] (*Id*.) Notably, in response to this question, the VE testified that the three previous jobs he had identified in response to the first hypothetical (i.e., order puller, hand packager, and laundry laborer) "would still apply" even with a limitation to superficial interactions, as defined by the ALJ above. (Tr. 92.) The VE also later reiterated that these three jobs involved "simple, routine tasks" and were "at superficial interaction." (Tr. 96.)

The Court also rejects Muoio's argument that the ALJ should have used the definition of the term superficial set forth in the AC Decision and that "based on that definition, the [VE] would have found that an individual would be unable to sustain employment." (Doc. No. 12 at PageID# 594.)

---

[9] The definition provided by the ALJ to the VE is actually consistent with the definition of the term superficial that was offered by Muoio's own counsel during his opening statement at the hearing. Specifically, Muoio's counsel stated, in relevant part, that "[t]he Appeals Council has defined the superficial interaction [as] no more than cursory or shallow..." (Tr. 79.)

As an initial matter, as set forth *supra*, neither this Court nor the ALJ are bound by the AC Decision because "the Appeals Council's definition in a remand order for [an] unrelated case does not constitute an official definition by the SSA that is binding on it at large or on this Court." *Bobak*, 2025 WL 2664461 at * 10.  *See also Stephen D. v. Comm'r of Soc. Sec.,* 2023 WL 4991918 at *14 (S.D. Ohio Aug. 4, 2023) ("a single Appeals Council order in an unrelated case is not binding on the Commissioner and has no precedential value beyond the case in which it was entered"), *report and recommendation adopted*, 734 F.Supp.3d 729 (S.D. Ohio May 16, 2024); *Tammy W.,* 2024 WL 4284251 at *4 (finding that the ALJ was not bound by the Appeals Council's definition of the term "superficial" from an unrelated case).

In any event, the Court disagrees with Muoio that "based on [the Appeals Council's] definition, the [VE] found that an individual would be unable to sustain employment." (Doc. No. 12 at PageID# 594.) In the AC Decision, the Administrative Appeals Judge defined the term superficial interaction as meaning that "the claimant could not have sustained more than shallow or cursory interactions with others, i.e. coworkers, the general public, and/or supervisors."  (Tr. 335.)  This is essentially the same definition of superficial that the ALJ posed to the VE during the second hypothetical -- in response to which the VE testified that the hypothetical individual would still be able to perform the jobs of order puller, hand packager, and laundry laborer.  (Tr. 92.)  Thus, this argument is without merit and rejected.[10]

---

[10] The Court notes that Muoio's counsel asked the VE the following question during the hearing:  "if we were to further define the superficial when we're talking about cursory -- if we're talking about cursory such as limited interaction such as exchanging basic greetings, if it were defined in that sense, would I be correct that would preclude the ability to sustain competitive work activity?"  (Tr. 95.)  The VE responded that "[i]f that's the only type of interaction they could deal with, then yes, it would, because that -- **that would be much less than superficial interaction**." (*Id.*) (emphasis added).  Thus, the VE did not believe that the narrow definition of superficial offered by Muoio's counsel (i.e., "exchanging basic greetings") was consistent with the definition of the term superficial interaction provided by the ALJ.  Nor did the VE

Accordingly, even assuming *arguendo* that the ALJ had not adequately explained his reasons for omitting a limitation to superficial contact from the RFC, any error would be harmless in light of the VE's testimony that there were representative jobs in significant numbers in the national economy for a hypothetical individual with Muoio's RFC that was also limited to superficial interactions with supervisors, coworkers, or general public. [11]

## V.      Conclusion

For all of the foregoing reasons, Plaintiff's Objection (Doc. No. 12) is overruled.  The Court accepts the Magistrate Judge's Report and Recommendation (Doc. No. 11), and the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

                                                                     *s/Pamela A. Barker*
                                                                     PAMELA A. BARKER
Date:  February 19, 2026                      U. S. DISTRICT JUDGE

---

otherwise testify that an individual with Muoio's RFC that was limited to superficial interaction (as defined by the ALJ) would be unable to sustain competitive employment.

[11] As a final note, the Court finds that Muoio's reliance on the Sixth Circuit's decision in *Kinney v. Comm'r of Soc. Sec.*, 2024 WL 2273365 (6th Cir. May 20, 2024) is misplaced.  In *Kinney,* the ALJ found a medical opinion to be "consistent with and supported by the record as a whole" and "persuasive," but then omitted a limitation contained therein requiring flexible breaks without explanation. *Id*. at *5.  The Sixth Circuit determined that "although the ALJ was not required to incorporate the flexible break scheduling limitation, the failure to do so without explaining its omission warrant[ed] reversal" given the fact that the ALJ found the medical examiner's opinion to be persuasive. *Id.* at * 9.  *Kinney* is distinguishable from the instant case for several reasons.  First, unlike *Kinney*, the ALJ in the instant case did not state that he found the opinions of Drs. Zeune and Rudy fully persuasive.  Rather, the ALJ found that Dr. Zeune's and Dr. Rudy's opinions were only "partially persuasive."  Courts have distinguished *Kinney* on this basis.  *See, e.g., Haahr v. Comm'r of Soc. Sec*., 2024 WL 5242214 at * 4 (N.D. Ohio Dec. 30, 2024).  Second, in *Kinney*, the VE testified on cross-examination that a flexibility limitation would be considered an accommodation.  *See Kinney v. Comm'r of Soc. Sec.*, 2023 WL 5042599 at * 6 (N.D. Ohio June 12, 2023).  Thus, the ALJ's failure to include a flexible break limitation in the RFC could not be considered harmless error.  However, as discussed above, any error by the ALJ in the instant case was harmless because the VE testified that Muoio could perform the jobs of order puller, hand packager, and laundry laborer, even with a further limitation to superficial contact.  Accordingly, *Kinney* is distinguishable from the instant action and does not require a different result.